# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **CORPORATION BERTEC,** | : |
| Plaintiff, | : Case No. 2:19-CV-04623 |
| v. | : CHIEF JUDGE ALGENON L. MARBLEY |
| **SPARTA SOFTWARE CORPORATION, AND PLAYGROUND GLOBAL LLC** | : Magistrate Judge Vascura |
| Defendants. | : |

## ORDER

This matter comes before the Court on Defendant, Playground Global LLC's Motion to Dismiss Plaintiff's Verified Complaint for Injunctive and Other Relief. (ECF No. 27). Defendant's Motion requests that this Court dismiss Plaintiff's complaint for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. *Id.* For the reason stated below, this Court **DENIES** Defendant's motion.

### I. BACKGROUND

Bertec Corporation ("Bertec") is an Ohio company that manufactures and sells force plates, a product that analyzes a person's gait, balance, and performance in certain exercises when a person jumps on the force plate. (ECF No. 2 at 4-5). Sparta Software Corporation ("Sparta") is a corporation that provides health and performance software and services to athletes and military personnel. (ECF No. 27 at 2). Playground Global LLC ("Playground") is a Palo Alto venture capital fund that invests in and provides engineering and other services to early stage startup companies, like Sparta. (ECF No. 44 at 2). Playground invested approximately $5 million in Sparta in December 2017 and acquired 20% of Sparta's shares. *Id.* at 4.

Beginning in December 2017, Playground conducted due diligence into Sparta's business operations and learned that Sparta had no capabilities to manufacture its own force plates. Sparta and Playground agreed that Playground would design a prototype of a force plate for Sparta and Sparta would decide whether to use that prototype. (ECF No. 44 at 5). Between June and September 2018, Playground built and tested a force plate prototype. *Id.* at 6. In July of 2018, Playground tested its prototype and did some benchmark comparisons of its prototype compared with Bertec's force plates. *Id.* at 6. According to Playground it used a publicly available program called Tera Term as well as Bertec's free and publicly available software to read the raw data generated by both the prototype and Bertec's force plates. *Id.* Playground conducted further testing in September 2018 and then handed off the design files to Sparta. *Id.* Sparta also identified several manufacturers that Sparta could pay to build the force plate prototype and continued to provide input into Sparta's manufacturing of its own force plate. *Id.* at 6-7.

Bertec has sold Sparta force plates since 2010. (ECF No. 2 at 5). In August 2018, around the same time that Playground was developing and testing its force plate prototype, Bertec and Sparta negotiated and entered into an Exclusive Supply and Software License Agreement ("Agreement") wherein Sparta agreed to purchase all the force plates it would need exclusively from Bertec for five years and Bertec agreed to give Sparta access to its source code so that Sparta could standardize its data to ensure it was medically and scientifically valid. (ECF No. 2 at 7-8). In June 2019, Sparta informed Bertec that it was planning to create and sell its own force plates, and that it had been developing these force plates since December 2017. (ECF No. 2 at 9).

Bertec brought suit against Sparta and Playground on October 18, 2019 alleging that Sparta breached the Agreement at Playground's direction by sharing its source code with Sparta to create its own force plates. (ECF No. 2 at 9-10). Playground alleges that it did not know about the

2

agreement between Bertec and Sparta until this lawsuit was filed in October 2019 and that it has never seen the source code that Bertec produced to Sparta. (ECF No. 44 at 7). Playground has filed a motion to dismiss on the basis that this court lacks personal jurisdiction over its claims and Bertec has failed to state a claim upon which relief may be granted. (ECF No. 27).

## II.     LEGAL STANDARD

### A. Personal Jurisdiction

A federal court sitting in a diversity matter may exercise jurisdiction over a defendant if jurisdiction is "both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). The party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction. *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014). When a district court rules on a motion to dismiss without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in the light most favorable to the nonmoving party. *Id.* To defeat such a motion, Plaintiff need only make a prima facie showing of jurisdiction. *Id.* When jurisdiction is challenged in a motion to dismiss, however, "the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)). In determining whether plaintiff has met its burden, the district court considers the pleadings and affidavits "in a light most favorable to the plaintiff[ ]" and does not weigh "the controverting assertions of the party seeking dismissal." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen*, 935 F.2d at 1459).

### B. Failure to State a Claim

3

A Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). The Court must construe the complaint in the light most favorable to the non-moving party and must accept plaintiff's allegations as true. *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 446 (6th Cir. 2014), *as amended* (Dec. 11, 2014); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S. Ct. 1955. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### III.  LAW & ANALYSIS

#### A.  Personal Jurisdiction

Playground requests that this Court grant its motion to dismiss arguing this Court has no personal jurisdiction over it since it is an out of state company and has no ties to Ohio. (ECF No. 27 at 5-6). For a federal court to have personal jurisdiction over an out of state person or company, the court must satisfy both the state's long arm statute and the due process clause of the Fourteenth Amendment. *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019). Personal jurisdiction may be specific or general. *Id*. A state exercises general personal jurisdiction over a defendant when the defendant's connections to the state are so extensive that it is essentially "at home" in the state and may be brought to court there on any matter, even when not related to the defendant's connections to the state. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A state exercises specific jurisdiction over a defendant where the defendant's connections to the state form the basis of the suit. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)

A state's exercise of specific personal jurisdiction pursuant to a long arm statute must satisfy the requirements of due process—meaning the out of state defendant must have sufficient minimum contacts with the state so that the court's exercise of its power over the defendant does not "offend traditional notions of fair play and substantial justice." *Intl. Shoe Co. v. State of Wash., Off. of Unempl. Compen. and Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

A nonresident is required to have "purposefully avail[ed]" him or herself of the privilege of acting in the forum. The proper focus is on the "affiliation between the forum and the underlying controversy" and "not the foreign defendant's relationship with an in forum plaintiff." *Power Investments*, 927 F.3d at 917-18 (6th Cir. 2019) (citing *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012) and *Walden v. Fiore*, 571 U.S. 277, 286 (2014)).

5

### 1. Ohio Long Arm Statute

Bertec argues that Playground is subject to specific personal jurisdiction pursuant to Ohio's long arm statute Oh. Rev. C. 2307.382 sections (A)(4), (A)(6), and (A)(7). Ohio's long arm statute provides for specific personal jurisdiction over an out of state defendant in relevant part as follows:

> A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> . . . .
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> . . . .
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
> (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

Oh. Rev. C. 2307.382. Bertec argues that Oh. Rev. C. 2307.382(A)(4) applies because through its investment in Sparta, "Playground derives substantial revenues from Bertec's goods and services rendered in Ohio" since Playground's development of a knock off force plate for Sparta will generate revenue and save development and manufacturing costs for Sparta. (ECF No. 36 at 3). Additionally, Bertec argues that Oh. Rev. C. 2307.382(A)(6) applies because Playground and Sparta conspired to knock off Bertec's force plate and used the exclusive dealing Agreement as a means of obtaining Bertec's source code to misappropriate Bertec's confidential information. *Id.* at 3-6. Bertec adds that Playground did these acts "reasonably expecting" and "fully intending to harm Bertec in Ohio" by contacting over 30 vendors who would replace Bertec and supply Playground with parts for force plates. *Id.* at 6.

Playground disputes that Oh. Rev. C. 2307.382(A)(4) applies, arguing that it applies only to individuals or corporations that specifically target the Ohio market with their goods and services.

Other courts construing this provision have determined that 2307.382(A)(4) cannot be the basis for personal jurisdiction unless the substantial business and revenue is generated in Ohio. *See Lewis v. Horace Mann Ins. Co.*, 2003-Ohio-5248, ¶ 32 (noting that section (A)(4) of the Ohio long arm statute requires that the "'business' or 'substantial revenue' be rendered in Ohio" and determining that defendant did not derive substantial revenue from goods sold in state where defendant's collected a maximum of $12,000 annually from Ohio sales out of a total gross revenue of between $2-$3 million). Because Playground has not itself engaged in a persistent course of conduct nor derived substantial revenue from goods used, consumed, or services rendered in the state, section (A)(4) cannot be relied on to assert personal jurisdiction over Playground. *Id.* Bertec is alleging that it sells products in Ohio and that it will no longer be able to sell those products because Playground has interfered in its contract with Sparta. The fact that Sparta will save money and that this will in turn increase the revenue that is due to Playground as a result of its investment in Sparta is of no consequence since the substantial revenue will accrue elsewhere. Bertec has not alleged that Sparta currently derives substantial revenue from goods used or consumed or services rendered in Ohio. The relevant inquiry in (A)(4) has to do with whether the substantial revenue is accrued within the state.

Playground also disputes that Oh. Rev. C. 2307.382(A)(6) applies, arguing that this section of the statute only confers jurisdiction where it is "clear from the record that defendants' actions were taken with the purpose of injuring [the plaintiff]." Playground argues that the evidence indicates that Bertec that Playground's actions were taken to lower costs and not to injure Bertec. (ECF No. 39 at 5) (citing *First Fran. Capital Corp. v. Jack in the Box, Inc.*, 1:17-CV-397, 2017 WL 3269260, at *13 (S.D. Ohio Aug. 1, 2017)). Playground cites to *First Fran. Capital Corp. v. Jack in the Box, Inc.* to support its argument that Bertec cannot show that Playground's actions

7

were taken with the purpose of injuring Bertec. In *First Fran. Capital Corp. v. Jack in the Box, Inc.*, however, the Court determined that plaintiff was not able to allege "facts to show the assets involved here are those of an Ohio corporation given that plaintiff is an Indiana corporation with its principal place of business in New Jersey." *Id.* Here, Bertec is an Ohio corporation and has its principal place of business in Ohio. It has alleged and brought forward sufficient facts that it was injured in Ohio by Playground's efforts to create a force plate prototype for Sparta in order to reduce Sparta's operating costs. As the Sixth Circuit has observed, § 2307.382(A)(6) has been given a "broad approach to its application." *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012). In *Schneider*, the Court determined that § 2307.382(A)(6) applied to defendant, Utah attorney Thomas Nelson, where Nelson drafted a letter for a company operating a ponzi scheme. Nelson alleged that he did not participate in mailing the letter and that he did not know that the letter would be sent to an Ohio resident. The Appeals Court determined that "[i]t defies logic that Nelson participated in this transmission but remained ignorant of the investors' geographic locations. If true, the only possible explanation is that Nelson intentionally buried his head in the sand, and that cannot save Nelson from being subject to jurisdiction in Ohio." *Id.* at 700–01.

Here, too Playground cannot "bury [its] head in the sand" and escape being subject to jurisdiction in Ohio by claiming that it did not know that Bertec is an Ohio corporation or that interfering with the contract between Bertec and Sparta would cause an injury to Bertec in Ohio. After all, Playground admits that it conducted enough due diligence on Sparta before investing in the company to determine that Sparta did not then have the ability to make its own force plate and sourced them from Bertec and others. (ECF No. 44 at 4-5). Playground also admits that it was aware that it was trying to benchmark its product to Bertec's and that Sparta provided it with one of Bertec's force plates for comparison. *Id.* at 5-7. All of this demonstrates that Playground was

8

aware that it was assisting Sparta in creating a product that would replace Bertec's and allow Sparta to source its force plate needs internally, instead of pursuant to the Agreement between Sparta and Bertec. Bertec has demonstrated that 2307.382(A)(6) applies by alleging that Playground's actions in California were committed with the purpose and reasonable expectation that Bertec would be injured (lose sales) in Ohio.[1]

### 2. Due Process

In addition to meeting the requirements of the Ohio long arm statute, Bertec must also satisfy the requirements of due process. To do so, Bertec must show

> (1) purposeful availment "of the privilege of acting in the forum state or causing a consequence in the forum state," (2) a "cause of action ... aris[ing] from activities" in the state, and (3) a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (citing *S. Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

First, Bertec has shown that Playground has sufficient minimum contacts with Ohio. Two Supreme Court cases guide this court's analysis on minimum contacts—*Calder v. Jones*, 465 U.S. 783 (1984) and *Walden v. Fiore*, 571 U.S. 277 (2014). In *Calder*, the Supreme Court determined that a Florida newspaper and reporter had established sufficient contacts with California by publishing an article about a California actress in California that relied on California sources. 465 U.S. at 783. In *Walden*, the Supreme Court determined that a Georgia police officer lacked sufficient contacts with Nevada where the officer seized a large amount of currency from Nevada citizens transiting through an Atlanta airport and only knew that the travelers were from Nevada. 571 U.S. at 277. Playground alleges that *Walden* controls and that *Calder* is inapplicable here

---

[1] Bertec also alleges that Oh. Rev. C. 2307.382(A)(7) applies. Having found that (A)(6) applies, this court declines to determine whether the elements of (A)(7) have been met.

9

because Bertec has not alleged or shown that Playground knew Bertec was an Ohio company. Recently, the Sixth Circuit considered the applicability of *Calder* after *Walden* in the context of a similar dispute relating to whether an out of state defendant had established minimum contacts with the forum state, Kentucky, where the defendant had never entered the state. *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 919 (6th Cir. 2019). In *Power Investments*, the Appeals Court considered the defendant's electronic activities in determining that the Defendant had "purposefully availed himself of the privilege of . . . causing a consequence [in Kentucky]." *Id.* at 919. (internal quotation marks omitted).

Just as in *Power Investments*, it is true that Playground never entered Ohio or conducted business in Ohio. Its actions, however, were directed at disrupting an ongoing business relationship in Ohio, thus causing a consequence in Ohio. In *Walden*, the Supreme Court determined that the claimed injury in Nevada was not "tethered to Nevada in any meaningful way" because the alleged injury (lacking access to funds in Nevada) had nothing to do with anything independently occurring in Nevada and was simply "where respondents chose to be at a time when they desired to use the funds seized by petitioner." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Unlike in *Walden*, Playground's Ohio contacts are not merely fortuitous or solely based on Playground's relationship with Bertec, but are instead a product of Playground's conduct in allegedly stealing Bertec's source code to develop a product that would interfere with Bertec's contractual agreement with Sparta. Additionally, Playground has stated that it used Bertec's software in the benchmarking process. (ECF No. 44) ("To read raw data coming from respective force plates, Playground's engineers used . . . Bertec's free and publically [sic] available software"). Just as in *Power Investments*, the "reality that modern business often occurs electronically . . . . will not defeat personal jurisdiction. . . if the defendant's efforts are

purposefully directed toward residents of another State." 927 F.3d at 919 (internal quotation marks omitted). Further, Playground's own admissions regarding conducting due diligence on Sparta undermines its argument that it did not know anything about Sparta's contract or dealings with Bertec. (ECF No. 44 at 4-5). Similarly, in *Stolle Mach. Co., LLC v. RAM Precision Industries*, 605 Fed. Appx. 473, 480 (6th Cir. 2015) the Sixth Circuit determined that the defendant, a former employee who opened a competing company in China with misappropriated trade secrets, "necessarily would have had the purpose and reasonable expectation of enhancing his own business at the expense of Stolle's business in Ohio." Without weighing the evidence or deciding the underlying issues, Playground's Ohio contacts have been established through evidence that Playground targeted an Ohio business and used that business's own data and tools to create a competing product that would affect an Ohio contract.

### 3. Arising from

Bertec's claims against Playground also satisfy the second prong, which requires that the cause of action arise from Playground's contacts with Ohio. This prong "is subject to a lenient standard." *Schneider*, 669 F.3d at 703 (6th Cir. 2012). As determined above, Bertec's claims arise from Playground's Ohio connections because Playground used electronic software obtained from Bertec and allegedly used Bertec's source code to create a prototype that would interfere with Sparta and Bertec's Ohio contract for the supply of force plates.

### 4. Substantial Connection

Bertec also satisfies the third requirement that Playground have a sufficiently substantial connection to the forum that the exercise of jurisdiction is not unreasonable. Where the first two prongs have been established, "an inference of reasonableness arises and only the unusual case will not meet this third criteria." *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d

544, 554 (6th Cir. 2007) (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1461 (6th Cir.1991)) (internal quotation marks omitted).

In deciding this element, courts consider the following factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 554–55 (6th Cir. 2007) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir.2005)).

The first factor weighs against personal jurisdiction because Playground is based in California and defending this case in Ohio would pose a burden on it. This burden alone, however, does not overcome the "inference of reasonableness" that attaches when a plaintiff demonstrates purposeful availment and that the cause of action arises from the state connections. *Schneider v. Hardesty*, 669 F.3d 693, 704 (6th Cir. 2012) ("While defending this matter in Ohio imposes a burden on [defendant], we cannot conclude that this burden creates an 'unusual case' where the 'inference of reasonableness' should be abandoned."); *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005) ("[W]e have deemed specific jurisdiction to be proper even when a defendant would be compelled to travel.").

The second factor weighs in favor of personal jurisdiction because Ohio has an interest in addressing injuries to its citizens. *Schneider,* 669 F.3d at 704 (6th Cir. 2012) ("Ohio has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents…"); *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 555 (6th Cir. 2007) ("Michigan clearly has an interest in protecting a company whose principal place of business is located in Michigan.").

The third factor also weighs in favor of personal jurisdiction because Bertec has an interest in obtaining relief preventing Playground from further using its source code. (ECF No. 36 at 13).

Finally, the fourth factor is neutral because even though a California court has an interest in adjudicating the matter, it would be inefficient for a court there to entertain a parallel proceeding for the same set of claims against only one of the defendants. *Conn v. Zakharov*, 667 F.3d 705, 721 n.8 (6th Cir. 2012) (noting that in deciding reasonableness, it is proper to consider which state would be the most efficient forum for resolution of the dispute, "what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation"). Here, Ohio law governs the contract between Sparta and Bertec,[2] this Court has personal jurisdiction over Sparta, and it would be most efficient to adjudicate the entire matter in Ohio. Because Playground has not brought forward any considerations that would overcome the strong inference of reasonableness, the exercise of jurisdiction over Playground is reasonable and comports with due process.

### B. Failure to State a Claim

Playground also argues that this Court should dismiss Bertec's complaint for failure to state a claim upon which relief may be granted for two reasons. First, Playground argues that the state and federal trade secret claims should be dismissed because Bertec has not defined the alleged trade secrets. (ECF No. 27 at 13-17). Second, Playground argues that Bertec's tortious interference claims are preempted by the trade secret allegations and do not allege Playground's intent to interfere. *Id.* at 18-21.

### 1. Trade Secret Claims

---

[2] ECF No. 1-1 at 28.

13

The federal Defend Trade Secrets Act 18 U.S.C. § 1836 requires a plaintiff to show "(1) the existence of a protectable trade secret; and (2) misappropriation of the trade secret by defendant." *PPS Serv. Group, LLC v. Eckert*, 1:18-CV-727, 2019 WL 3927232, at *3 (S.D. Ohio Aug. 20, 2019). To state a claim for a violation of the Ohio Uniform Trade Secret Act ("OUTSA") a plaintiff must allege "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 Fed.Appx. 860, 861 (6th Cir. 2008).

Playground argues that Bertec's trade secret claims should be dismissed because Bertec does not define the trade secrets at issue. The Supreme Court of Ohio has set out a six-factor test for assessing whether a plaintiff has shown that its information is a trade secret:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. The Plain Dealer v. Ohio Dept. of Ins.*, 687 N.E.2d 661, 672 (Ohio 1997). Plaintiffs rely on this Court's decision in *Murray Energy Holdings Co. v. Bloomberg, L.P.*, 2:15-CV-2845, 2016 WL 3355456, at *7 (S.D. Ohio June 17, 2016) to argue that dismissal is warranted. In *Murray*, this Court determined that dismissal was appropriate because Plaintiff failed to allege facts showing that their alleged trade secrete has economic value from not being known and because the Plaintiffs did not make efforts to maintain the secrecy of their alleged trade secret. In *Murray*, the plaintiffs defined their trade secrets broadly as "confidential and proprietary business information, business plans, financial information, and trade secrets, including, without limitation, their actual and projected adjusted EBITDA, capex, production, sales volume, cost of sales, price realizations, liquidity, and/or cash reserves." *Id.* at *8. Here, however, Bertec has defined its trade

14

secrets with much more specificity. Bertec's complaint alleges that its trade secret is "technical knowledge and software," essentially source code, that is used to "analyze and process the data" generated "when a user jumps on a force plate." (ECF No. 1 at 4).

Also, the *Murray* plaintiffs' information was routinely disclosed outside the business to prospective investors without requiring them to sign a confidentiality agreement and thus did not have any "independent economic value...from not being generally known to . . . . other persons who can obtain economic value from its disclosure or use." *Id.* at *9. Here, Bertec outlined the measures it has taken to protect its confidential information including limiting access to its facilities, password protecting its files and computers, limiting access to the source code to only two of its own employees, maintaining the source code in a secure storage system, requiring its own employees to sign non-disclosure agreements, as well as not sharing the source code with those outside the business without a confidentiality agreement. (ECF No. 1 at 5, 7). In the complaint, Bertec also alleges that its source code is valuable to its buyers, including Sparta and that Sparta entered into a lucrative deal with Bertec in order to gain access to its source code. *Id.* at 7-9. Bertec also alleges that it has invested "time, energy, and capital" in "researching, developing, and implementing" its source code. *Id.* at 18. Bertec's allegations in the complaint sufficiently state the existence of a trade secret.

Playground also argues that Bertec has not alleged how Playground has misappropriated Bertec's trade secrets because Bertec does not specify whether Playground "acquired the purported trade secrets through improper means or . . . disclosed or used the trade secrets with knowledge that Sparta acquired them through improper means." (ECF No. 27 at 16-17). Bertec's complaint, however, alleges that Bertec established a confidential relationship with Sparta by negotiating and signing an agreement whereby it agreed to disclose its source code so long as Sparta kept the

15

source code protected. (ECF No. 1 at 7-9, 11). Bertec also alleges that "[g]iven Sparta and Playground's close relationship, as well as Playground's insistence that Sparta use Playground's network of engineers and manufacturers it is likely that Sparta has shared the Confidential Information with Playground to create the force plates." *Id*. at 11

Dismissal is appropriate where a plaintiff fails to articulate a theory of trade misappropriation and makes only "naked assertions" devoid of "factual enhancement." *Exal Corp. v. Roeslein & Associates, Inc.*, 4:12CV1830, 2013 WL 6843022, at *5 (N.D. Ohio Dec. 27, 2013) (determining that plaintiff failed to state a claim for misappropriation based on actual use of the trade secret where the "the balance of the allegations regarding misappropriation of trade secrets refer to future use only and do not support actual use."). That is not the case here, since Bertec has claimed that Playground and Sparta misappropriated Bertec's source code by Sparta's sharing the source code with Playground and by Playground's use of the source code to create a knock off force plate. Thus, Bertec has pleaded a claim for misappropriation of trade secrets properly.

### 2. Tortious Interference Claims

Playground argues that Bertec's tortious interference claims should be dismissed because the claims are preempted by the OUTSA and Bertec has failed to plead the requisite elements properly.

First, OUTSA does preempt conflicting "tort, restitutionary, and other laws" that provide "civil remedies for misappropriation of a trade secret." Ohio Rev. Code § 1333.67(A). The Sixth Circuit has determined that the "test to determine whether a state law claim is displaced by OUTSA is to determine whether the claims are no more than a restatement of the same operative facts that formed the basis of the plaintiff's statutory claim for trade secret misappropriation." *Stolle Mach. Co., LLC v. RAM Precision Industries*, 605 Fed. Appx. 473, 485 (6th Cir. 2015) (internal quotation

marks omitted). Plaintiffs are, however, permitted to plead claims in the alternative, and a court may not dismiss claims as preempted until the parties have had a chance to develop the facts during discovery to assess whether "facts different from those comprising the misappropriation claim support the state common law state claims." *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 990 (N.D. Ohio 2008). Because it is unclear whether further discovery would enable Bertec to base its tortious interference claims on facts different from those alleged in its trade secret claim, dismissal is inappropriate at this juncture. *Id*.

Second, Bertec has properly pleaded the required elements of a tortious interference claim. A claim for tortious interference requires a Plaintiff to show: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999). Playground argues that Bertec has failed to show that that Playground had knowledge of the agreement between Sparta and Bertec, despite Bertec's "conclusory" allegation that "Playground was or should have been aware" of the agreement. (ECF No. 27 at 18).

While Bertec's allegation that "Playground was or should have been aware" of the contract between Sparta and Bertec is insufficient on its own to satisfy the second prong, Bertec has also alleged that Playground had actual knowledge by claiming that as an investor in Sparta, Playground exerted control over Sparta's operations and directed it to breach the contract in an effort to save money. (ECF No. 1 at 10). Playground also disputes that Bertec has alleged sufficiently the third and fourth elements of a tortious interference claim. (ECF No. 27 at 9).

To prove "wrongful procurement" and "lack of justification, the plaintiff must show that the defendant's interference with another's contract was improper." *Bridge v. Park Nat. Bank*, 10th

17

Dist. Franklin No. 03AP-380, 2003-Ohio-6932, ¶ 6-7 (determining that plaintiff sufficiently stated tortious interference claim where plaintiff alleged defendant had interfered "with full knowledge [of the existence] of the contract between [defendant] and the owner of the premises for fire restoration, with the intent of harassing, annoying and causing unnecessary delays in [defendant's] timely performance under the terms of the contact [sic], . . . thereby induc[ing] the owner of the premises to repudiate and cancel the contract."). A court determining whether conduct was improper should give "consideration . . . to, among other things, the nature of the actor's conduct, and the actor's motive." *Id.* at ¶ 6-7.

Playground argues that Bertec concedes that Playground's intent was not to harm Bertec by attaching an email where Sparta's Vice President indicates that Sparta cannot purchase force plates because its investor "required us to find a solution where we can get higher volumes of plates at a significantly lower cost." (ECF No. 27 at 19). Playground takes issue with Bertec's "mischaracterization" of the email from Sparta's Vice President as suggesting that "Playground required Sparta to breach the agreement." *Id.* In doing so, however, Playground reveals that there is no deficiency with Bertec's pleading and concedes that Bertec has stated specific facts for its allegation that Playground knew of the existence of the contract and directed Sparta to breach it. Bertec has sufficiently alleged that Playground's motivating factor was unjustified because in aiming to cut down Sparta's costs it consequently aimed to deprive Bertec of the profits of the Agreement that it had brokered. (ECF No. 1 at 10). Whether or not Bertec will succeed in proving a lack of justification for interfering is a fact issue to be determined at trial, and not a deficiency in the pleading.

### 3. Unjust Enrichment Claim

Finally, Playground argues that Bertec's unjust enrichment claim should be dismissed as it is preempted by OUTSA and because Bertec has not alleged that it entered an economic transaction with Playground. (ECF No. 27 at 20-21). Plaintiff's unjust enrichment claim is not preempted by OUTSA for the same reasons discussed above regarding Plaintiff's tortious interference claims. *See Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 990 (N.D. Ohio 2008).

Playground argues that Bertec has failed to allege that it "entered into an economic transaction with Playground" as required to state a claim for unjust enrichment. (ECF No. 27 at 20-21). An unjust enrichment claim exists where "1) a benefit is conferred by a plaintiff on a defendant; 2) the defendant has knowledge of the benefit; and 3) the defendant retains the benefit under circumstances where it is unjust to do so." *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 824 (N.D. Ohio 2006).

Playground argues that because Bertec's theory is based on a financial transaction—the agreement between Sparta and Bertec—Bertec may not rely on the theory of unjust enrichment articulated in *In re Natl. Prescription Opiate Litig.*, 1:17-MD-2804, 2018 WL 6628898, at *20 (N.D. Ohio Dec. 19, 2018) and must instead show an economic transaction between plaintiff and defendant in order to establish that the defendant retained a benefit. That is not the case. As explained in *Opiate Litigation*, the requirement that there be an economic transaction between plaintiff and the defendant is limited to situations where plaintiff is an indirect purchaser of defendant's good. *Id.* In those instances, plaintiff is required to show an economic transaction in order to establish that a benefit was conferred on defendant. *Id.* In *Opiate Litigation*, the court permitted plaintiffs to proceed with unjust enrichment claims based on the theory that plaintiffs had "conferred a benefit upon Defendants by paying for Defendants' externalities: the cost of the harms caused by Defendants' improper distribution practices." *Id.* at *21. Here, Bertec is the

19

creator and not the purchaser of the benefit that has been conferred. Because Bertec alleges that Playground is deriving a benefit from the use of its confidential information—a benefit that Playground has not paid for—Bertec has stated a claim for unjust enrichment.

## IV. CONCLUSION

For the reasons stated herein, this Court **DENIES** Playground's motion to dismiss for lack of personal jurisdiction or failure to state a claim upon which relief may be granted.

**IT IS SO ORDERED.**

                                                **ALGENON L. MARBLEY**
                                                **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: May 4, 2020**